OPINION OF THE COURT
Alexander Jeong, J.
The defendant, Daquan Ellis, is charged with criminal possession of a weapon in the second degree and related charges. He now moves this court to . order a Mapp/Dunaway hearing, seeking suppression of the pistol recovered at the scene. For the following reasons, the defendant’s motion is denied.
A defendant seeking suppression of evidence has the burden of establishing standing by demonstrating a legitimate expectation of privacy in the premises or object searched. (People v Wesley, 73 NY2d 351 [1989].)
The defendant contends that he has standing to challenge the seizure of the physical evidence in this case and that he is entitled to rely on the allegations of the People’s witnesses to establish standing pursuant to People v Burton (6 NY3d 584 [2006]) and People v Ramirez-Portoreal (88 NY2d 99 [1996]).
The People allege in the accusatory instrument in pertinent part: “The deponent states that, at the above time and place, deponent observed the defendant in possession of a .380 caliber semi-automatic pistol loaded with six rounds of ammunition in that deponent did recover said semi-automatic pistol from the ground where deponent observed the defendant place it.” The People further establish in the grand jury testimony that Police Officer Kimberly Huacon observed the defendant walking down the street. She alleged that the defendant made eye contact with her, leaned over and placed a firearm on the sidewalk. She then stated that the defendant walked one car length away and waited for the police to apprehend him.
The defense states that the People have charged Mr. Ellis with possession of the firearm on the theory that he possessed it during the initial police observation, and then placed it on the ground after “locking eyes” with the police officers. The defense argues that under a Burton analysis, the People’s allegation that the observation by the police of the gun in the defendant’s hand “clearly” gives the defendant standing to challenge the stop and seizure.
The defense’s reliance on Burton is misplaced. In Burton, the items sought to be suppressed were recovered from the defendant’s person, not the ground. In the case at bar, the item sought *902 to be suppressed was not recovered from the defendant’s person, nor is the allegation of “eye contact” indicative of police illegality. Unless the accused alleges facts that if true demonstrate standing to challenge the search or seizure, there is no legal basis for suppression and thus no need for a hearing. (People v Mendoza, 82 NY2d 415 [1993].) Standing exists where the defendant was aggrieved by a search of a place or seizure of an object in which he had a legitimate expectation of privacy. Obviously, in Burton, the defendant had an expectation of privacy in his person. Burton held that even though the defendant was allowed to utilize the People’s evidence to satisfy this standing threshold, that proof alone was not enough to grant a hearing because the accusation that contraband was recovered from the defendant did not create an issue of fact as to whether the search and seizure were the result of a Fourth Amendment violation. In Burton, the granting of a Mapp hearing was based simply on the allegation that the defendant was illegally searched because an expectation of privacy in a person’s body is presumed. A similar factual allegation, as averred to by defense counsel, that the defendant was standing on the street and that the police approached him for no reason is insufficient to confer standing when the contraband is recovered from a public place. “The identical pleading may be factually sufficient in one context but not the other.” (See People v Mendoza at 428; see also People v Ochjaroen, 34 Misc 3d 1240[A], 2012 NY Slip Op 50487[U] [Crim Ct, Kings County 2012].)
Likewise, the defense’s reliance on Ramirez-Portoreal is misplaced.[1] In Ramirez-Portoreal, the Court held, “Once defendant has established standing, it becomes the People’s burden to demonstrate that defendant’s action in discarding the property searched, if that is the fact, was a voluntary and intentional act constituting a waiver of the legitimate expectation of privacy.” (88 NY2d at 108 [emphasis added].) What defense counsel has failed to allege is that the defendant had an expectation of privacy in the place or item searched. The defendant has alleged only a possessory interest. The Ramirez-Portoreal Court held that standing to challenge a search is not established by asserting a possessory interest in the goods seized—defendant must assert a privacy interest in the place or item searched (citing People v Rodriguez, 69 NY2d 159, 159 *903 [1987]; People v Ponder, 54 NY2d 160 [1981]; United States v Salvucci, 448 US 83 [1980]; Rawlings v Kentucky, 448 US 98 [1980]). The Court further held, that
“[t]he suppression court must identify the object of defendant’s expectation of privacy, determine whether defendant exhibited an expectation of privacy in it, and evaluate whether the circumstances would lead society to regard defendant’s expectation as reasonable. If the court determines that [the] defendant had a legitimate expectation of privacy in the item searched, standing to challenge the legality of the police conduct is established.” (Ramirez-Portoreal at 109.)
While asserting a possessory interest, based on the People’s allegations, the defendant does not assert an expectation of privacy in the public ground where the pistol was recovered. In any event, society would not recognize an expectation of privacy in the public ground where the pistol was recovered. Also, Ramirez-Portoreal states that
“[o]ur decision was not intended to state [as] a general rule that defendant’s possessory interest is insufficient to establish standing as a matter of law . . . [t]he . . . court must also consider such factors as whether the defendant took precautions to maintain privacy and whether the defendant had the right to exclude other persons from access.” {Id. at 111 [internal quotation marks omitted].)
None of these factors are asserted in the defendant’s factual allegations.[2]
Comparison of the defendant’s factual allegations in the case at bar with those in People v Coleman (82 NY2d 415 [1993]), decided with Mendoza, clearly demonstrates the insufficiency of the defendant’s motion. The facts in Coleman bear resemblance to the case at bar. Coleman was charged with weapon possession for a gun he discarded. Coleman made the following sworn allegations of fact:
“Upon information and belief, based upon conversations with Mr. Coleman, the defendant was not engaged in any criminal activity on August 21, 1990. Nor had he given the police any probable cause to believe that he might be engaged in un *904 lawful behavior. Nevertheless, at about 12:15 a.m., police arrived, threw him against a car, and began to search him. The police contend, and in conversations with affirmant, Mr. Coleman concedes, a quantity of over $300 in cash was seized from his person. The police additionally contend that Mr. Coleman was observed by them to throw down a loaded .22 caliber pistol upon their approach. Although Mr. Coleman denies this allegation, the allegation by the prosecution’s witnesses that the defendant was seen in actual possession of the item is sufficient to confer standing on the defense to challenge the alleged seizure (People v Sutton, 91 AD2d 522 [1st Dept. 1982]). Affirmant alleges that if the weapon was discarded by the defendant, this action only occurred as a result of illegal police conduct—that is, the detention and arrest of Mr. Coleman on less than reasonable suspicion that he had committed a crime (See People v Howard, 50 NY2d 583). The defense moves to suppress the pistol, as well as the currency found on the defendant’s person, as the fruits of [the] illegal police conduct.”[3] (82 NY2d at 424.)
The Court of Appeals in affirming Coleman dealt solely with sufficiency of the factual allegations necessary to confer standing to warrant a hearing on “dropsy” or abandonment cases. The lack of standing based on where the gun was recovered (the ground) was ostensibly conceded by Coleman since he made no argument to the contrary. The Coleman Court denied the suppression motion concluding that the detention and arrest occurred only after the relinquishment of the gun and hence the allegedly illegal conduct could not have served as a basis for suppression. As such Coleman did not identify any illegal conduct that would have warranted suppression of the gun. The facts in Coleman provide an excellent guide in determining the sufficiency of defense counsel’s factual allegations. Both Coleman and the case at bar are “dropsy” cases and in both cases defense counsel attempts to allege illegal police conduct as the basis for suppression. Despite a much more detailed factual allegation in Coleman, the Court affirmed the lower court’s decision to summarily deny the Mapp hearing. Coleman’s allegation that the police threw him against a car *905 and searched him, and further that “if ’ the weapon was discarded, that action only occurred as a result of illegal police conduct—the detention and arrest—was found to be insufficient. The only sentence in the entire allegation of fact which acknowledges discarding of a weapon by Coleman is stated hypothetically with the word “if” and thus is not an allegation of fact. Measured against this standard, the defendant’s reliance on the People’s allegations and grand jury testimony of Officer Huacon in the case at bar do not suffice. Even when taking together the factual allegations of the stop and recovery with the allegations in the accusatory instrument and the grand jury testimony, the defense allegations fall short. Defense counsel never established the causal link or nexus between any illegal police conduct and the defendant’s actions. The requirement of this link is implied in Coleman where the Court states the “defendant now asserts on appeal that the gun was discarded as a result of illegal police pursuit. But [the] defendant never alleged in his [first] motion papers that he was pursued by the police.” (See Coleman at 432 [citation omitted and additional emphasis added].) While the defendant in the case at bar is correct that appellate courts have closely scrutinized abandonment cases, the reliance on People v Quinones (61 AD2d 765 [1978]) is also misplaced. In Quinones, the Court held a suppression hearing only after standing was established. If the defendant in the case at bar wants to discredit the allegedly “rote” abandonment testimony given by Officer Huacon at the grand jury, then he must do so at trial since he failed to establish standing.
In the case at bar, defense counsel failed to properly link the allegation of the defendant’s discarding of the gun with any illegal police conduct that would have invoked Fourth Amendment issues. The defendant simply relies on the People’s allegations that an officer observed the defendant on the street and the two made eye contact before the defendant allegedly placed the gun on the street. Since discarding a gun prior to the police taking any action is deemed to not be a product of police conduct, in order to warrant a hearing defense counsel must allege illegal police conduct which caused the defendant to discard the contraband. (See People v Johnson, 93 AD3d 1317 [4th Dept 2012].) An officer looking at a pedestrian on a public street and making eye contact with him/her does not constitute illegal police conduct. Additionally, the defendant did not raise the necessary factual dispute in his motion. There *906 was no allegation of fact that the defendant had an expectation of privacy at the public ground where the gun was recovered. The defendant also failed to establish sufficient facts to invoke “forced abandonment” issues. As the Court stated in Burton,
“our conclusion does not alter the existing eviden-tiary requirements for suppression motions ... As we now clarify, standing does not arise from a defense motion to suppress that merely states, as attested by police, that the arresting officer conducted a search of the accused’s person and allegedly found narcotics in an article of clothing—this alone does not create an issue of fact as to whether a Fourth Amendment violation occurred. A defendant must additionally assert that the search was not legally justified [AND] there must be sufficient factual allegations to support that contention (see CPL 710.60 [1]).” (6 NY3d at 590-591 [emphasis added].)
CPL 710.60 requires a defendant to plead facts demonstrating an expectation of privacy: “it is after all the defendant alone who actually knows his or her connection with the searched area.” (See Mendoza/Coleman at 429.)
In the case at bar, the defendant’s reliance on the complaint and/or the grand jury testimony is insufficient to warrant the granting of a Mapp hearing. The defendant was required to make the necessary link from various sources. If the defendant was alleging forced abandonment then he should have factually alleged that illegal police conduct caused the defendant to abandon the property in question. By simply stating that “Mr. Ellis was standing by a car when he was seized by the police, and that the firearm was allegedly recovered from the ground nearby,” defense counsel failed to make this link. In fact, defense counsel was deliberately and artfully vague when it came to the gun, an issue about which the defendant would have had intimate knowledge. (See Coleman', Ochjaroen.)
The defense also relies on People v Rivera (index No. 3947/ 2014 [a non-published decision]) which cites People v Samuel (42 AD3d 551 [2d Dept 2007]) and People v Sutton (91 AD2d 522 [1st Dept 1982]).
First, Sutton is pre-Mendoza. Mendoza/Coleman makes it clear that alleging a possessory interest may not be enough of a factual allegation to confer standing. A defendant must also allege an expectation of privacy in the place that the item was allegedly discarded. Mendoza!Coleman also went up to the *907 Court of Appeals and was affirmed. Further, the defendant in Coleman cited the Sutton decision in his motion and tailored his allegations of fact to parallel the rationale in the Sutton decision. Yet the Court of Appeals in Coleman rejected the sufficiency of Coleman’s factual allegations. Accordingly, this court will follow Mendoza!Coleman.
Samuel, a Second Department case, is also difficult to reconcile with Coleman. In Coleman, the defense alleged, in part, “The police additionally contend that Mr. Coleman was observed by them to throw down a loaded .22 caliber pistol upon their approach.” (82 NY2d at 424 [emphasis added].) In Samuel, the Court stated that standing was established by “one of the arresting officers testifying] before the grand jury that the defendant had a gun in his pocket and threw it away after the officer approached him in the street.” (42 AD3d at 552 [emphasis added].)
The divergent opinions cannot be attributed to the use of two different prepositions—upon and after—especially in light of People v De Bour (40 NY2d 210 [1976]). Under De Bour, the most minimal (first level) police intrusion in street encounters involves approaching and requesting information from an individual based on an articulable and credible reason. Therefore, just simply approaching an individual on the public street without more cannot be considered any state-based intrusion at all. If the Samuel decision is interpreted as conferring standing to a defendant, on a “dropsy” case, who simply alleges that the police approached him without more, then the decision would contradict De Bour and Coleman. Under De Bour, a level one approach consists of approaching and requesting information. There is no lesser recognized police intrusion in street encounters. Accordingly, an approach without more by a police officer is not an intrusion and no police illegality can be inferred. Additionally, in “dropsy” cases similar to the case at bar, as a defendant cannot allege an expectation of privacy in the location where the contraband was recovered (usually because it is a public place), a defendant must allege some sort of unlawful police conduct or intrusion that caused the defendant to discard the contraband. Under De Bour, an approach by a police officer without more, even analyzed in the light most favorable to the defendant, cannot imply unlawful police conduct or intrusion.
The Samuel case has no subsequent appellate history and the People conceded that a Mapp hearing should have been *908 granted. Perhaps the concession resulted in a very succinct decision by the Second Department because an inspection of the trial court records in Samuel reveals additional facts which clearly confer standing and necessitate a hearing. The trial court record states that the officer told the defendant to “come over here” prior to the officer approaching the defendant. This distinction is important because the Court of Appeals in Mendoza/Coleman rejects the notion that an allegation of an officer approaching prior to the relinquishment of contraband is sufficient to confer standing. In fact, the Court of Appeals in Coleman interpreted the factual allegation that “Mr. Coleman was observed by [the police] to throw down a loaded .22 caliber pistol upon [the police] approach” to imply no illegal police conduct because it subsequently stated, “the detention and arrest [(not ‘upon approach’)] occurred only after relinquishment of the gun, and hence that allegedly illegal police conduct [(the detention and arrest)] would not serve as a basis for suppression.” (See Coleman at 424, 432.)
Accordingly, as the defendant’s motion failed to lay out a factual scenario which, if credited, would have warranted suppression of the gun, his suppression motion is summarily denied.

. Ramirez-Portoreal involved a suitcase and not a gun which can be readily identified as contraband.

. Actually, the facts as alleged indicate the opposite, that the defendant wanted to discard the property and subsequently not be connected to it.

. The Court did not rule on the seizure of the money because the People stated they would not be seeking to introduce the money at trial.